APPELLATE CASE NO. 12-57245

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

DC COMICS,

*Plaintiff – Appellee,*

v.

PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF; MARK WARREN PEARY, as personal representative of the Estate of Joseph Shuster; LAURA SIEGEL LARSON, individually and as personal representative of the Estate of Joanne Siegel; JEAN ADELE PEAVY,

*Defendants – Petitioners.*

---

## APPELLANTS' PETITION FOR REHEARING, OR, IN THE ALTERNATIVE, REHEARING EN BANC

---

Appeal From The United States District Court for the Central District of California,
Case No. CV-10-03633 ODW (RZx), Hon. Otis D. Wright II

---

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff  (188547)
 *mtoberoff@toberoffandassociates.com*
Keith G. Adams (240497)
 *kadams@toberoffandassociates.com*
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Facsimile:    (310) 246-3101

*Attorneys for Defendants-Petitioners*

# **TABLE OF CONTENTS**

RULE 35(b)(1) STATEMENT ................................................................1

BACKGROUND ................................................................................2

    A.    Superman ..........................................................................2

    B.    The 1992 Agreement ........................................................3

    C.    The Shuster Termination ..................................................5

    D.    This Action .......................................................................5

ARGUMENT .....................................................................................6

I.     THE OPINION CONFLICTS WITH BINDING PRECEDENT OF
      THIS COURT AND 17 U.S.C. §304(c)(5). ....................................6

    A.    The Termination Right ......................................................6

    B.    The Opinion Contravenes Section 304(c)(5), *Milne* and
        *Mewborn* .........................................................................7

II.    THE 1992 AGREEMENT DOES NOT REVOKE SHUSTER'S
      1938 SUPERMAN GRANT, NOR GRANT HIS COPYRIGHTS ..............11

    A.    No Novation Of The 1938 Grant Under New York Law ..................13

    B.    Frank And Jean Lacked Legal Authority To Revoke
        Shuster's 1938 Grant .......................................................17

    C.    It Was Error To Exclude Extrinsic Evidence ......................19

    D.    The Opinion Contravenes Summary Judgment Standards .................19

III.   DC'S THIRD CLAIM SHOULD BE DENIED ...................................20

CONCLUSION ................................................................................21

CERTIFICATE OF COMPLIANCE........................................................................22

CERTIFICATE OF SERVICE ..............................................................................23

APPENDIX:  OPINION & DISSENT

# TABLE OF AUTHORITIES

**Cases**

*Abuelhija v. Chappelle,*
2009 WL 1883787 (S.D.N.Y. 2009)................................................................ 13, 15

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986)........................................................................................19

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
548 U.S. 291 (2006)........................................................................................10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)........................................................................................20

*Classic Media, Inc. v. Mewborn,*
532 F.3d 978 (9th Cir. 2008) ................................................................... passim

*Eberle v. City of Anaheim,*
901 F.2d 814 (9th Cir.1990) ..........................................................................18

*Fair Hous. Council v. Riverside Two,*
*249 F.3d 1132 (9th Cir. 2001)* .......................................................................*19*

*Fred Fisher Music Co. v. M. Witmark & Sons,*
318 U.S. 643 (1943)..........................................................................................6

*Globe Food Services Corp. v. Consolidated Edison Company of New York, Inc.,*
584 N.Y.S.2d 820 (N.Y. App. Div. 1992) ......................................................15

*Goldbard v. Empire State Mut. Ins. Co.,*
171 N.Y.S.2d 194 (N.Y. App. Div. 1958) ......................................................14

*Goldome Corp. v. Wittig,*
634 N.Y.S.2d 308 (1995) ...............................................................................14

*Healey v. Healey,*
594 N.Y.S.2d 90 (1993) .................................................................................14

*Holland v. Fahnestock & Co., Inc.*,
210 F.R.D. 487 (S.D.N.Y. 2002) ...............................................................17

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ...................................................................20

*Kenavan v. Empire Blue Cross and Blue Shield*,
677 N.Y.S.2d 560 (N.Y. App. Div. 1998) ................................................19

*Mamouzian v. Ashcroft*,
390 F.3d 1129 (9th Cir. 2004)...................................................................19

*Marvel Characters Inc. v. Simon*,
310 F.3d 280 (2d Cir. 2002)........................................................................9

*Meyersohn v. Bloom*,
687 N.Y.S.2d 341 (N.Y. App. Div. 1999) ................................................14

*Milne v. Stephen Slesinger, Inc.*,
430 F.3d 1036 (9th Cir. 2005) ......................................................... passim

*Multimedia Patent Trust v. DirecTV, Inc.*,
2011 WL 3610098 (S.D. Cal. 2011).........................................................16

*Penguin Group (USA) Inc. v. Steinbeck*,
537 F.3d 193 (2d Cir. 2008)......................................................... 8, 11-12

*Rosenbaum v. City and County of San Francisco*,
484 F.3d 1142 (9th Cir. 2007)...................................................................18

*Ruso v. Morrison*,
695 F. Supp. 2d 33 (S.D.N.Y. 2010) ........................................................13

*Siegel v. National Periodical Publications, Inc.*,
508 F.2d 909 (2d Cir. 1974)...............................................................3, 16

*Singh v. Ashcroft*,
361 F.3d 1152 (9th Cir. 2004) ..................................................................18

iv

*Sporre v. International Paper*,
1999 WL 1277243 (S.D.N.Y. 1999)........................................................15

*Stewart v. Abend*,
495 U.S. 207 (1990)...............................................................................6

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
736 F. Supp. 1281 (S.D.N.Y. 1990) ......................................................14

*Ullman-Briggs, Inc. v. Salton, Inc.*,
754 F. Supp. 1003 (S.D.N.Y. 1991) ......................................................16

*Wang v. Chen*,
1992 WL 7840 (S.D.N.Y. Jan. 10, 1992) ..............................................14

*Water St. Dev. Corp. v. City of New York*,
632 N.Y.S.2d 544 (N.Y. App. Div. 1995) .............................................17

**Statutes**

9th Cir. R. 36-3 .....................................................................................2

17 U.S.C. § 203......................................................................................10

17 U.S.C. § 304(a)(1)(C)(iii) .................................................................7

17 U.S.C. § 304(c) ........................................................................ passim

17 U.S.C. § 304(c)(5)..................................................................... passim

17 U.S.C. § 304(d) ...............................................................................1, 7

37 C.F.R. § 201.10(b)(1)(iv)..................................................................20

Fed. R. App. P. 2....................................................................................19

Fed. R. App. P. 35....................................................................................1

Fed. R. App. P. 40....................................................................................1

Pub. L. 105-298 (1998) ............................................................................5

**Other Authorities**

22A N.Y. Jur. Contracts § 473 ................................................................16

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976) ......................... 9-10

## RULE 35(b)(1) STATEMENT

On November 21, 2013, a panel of this Court (Reinhardt, J., Thomas, J. Sedwick, D.J.), over a vigorous dissent by Judge Thomas ("Dissent"), issued the attached opinion ("Opinion" or "Op.") affirming a district court's decision that the 17 U.S.C. § 304(d) termination right of the Estate of Joe Shuster, Superman's co-creator, was "impliedly" eliminated by a boilerplate release in an irrelevant 1992 pension agreement with his siblings, who lacked authority and held no rights. *See* Appendix.

The Opinion warrants rehearing or rehearing en banc because it contravenes 17 U.S.C. §304(c)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary…"), Congress' clear objectives, and this Court's carefully-circumscribed decisions in *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005) and *Classic Media, Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008). Fed. R. App. P. 35, 40.

In misconstruing *Milne* and *Mewborn*, the Opinion enables easy circumvention of the termination right through *post hoc* rationalizations under state-contract law. *See* Dkt. 28-1 at 26-29. It introduces real uncertainty by replacing this Court's focused copyright analysis with pliable contract theories, subjecting a single preemptive copyright law regime to fifty different state-law regimes.

1

Congress enacted the termination right to benefit authors, and it is of exceptional importance to our artistic community. Siegel and Shuster are perhaps its poster children, losing Superman in 1938 for a pittance. This oft-cited case has thus garnered tremendous attention in court decisions, secondary legal sources, and the media. Although the Opinion eliminates critical federal rights over a strong dissent, and involves important issues of federal statutory construction, it is unpublished. It will nonetheless be cited under 9th Cir. R. 36-3, and endorses an erroneous published district court decision.

The Opinion disrupts the termination framework carefully crafted by this Court in *Milne* and *Mewborn* and followed by the Second Circuit. Rehearing is necessary to maintain the uniformity of this Court's decisions, correct manifest error, and avoid confusion as to this vital area of copyright law.

## BACKGROUND

**A.    <u>Superman</u>**

In 1934, Jerry Siegel and Joe Shuster created Superman. Excerpts of Record ("ER")-101 ¶1. Their character would become a cultural icon, spawn a multi-billion dollar franchise and bring fortune to many – but not them. ER-103 ¶4. On March 1, 1938, they signed, without counsel, a publishing agreement (the "1938 Grant") for $130. ER-101-02 ¶¶2-3. In a 1947 lawsuit, DC was held to own Superman under this 1938 Grant. ER-104-10 ¶¶5-10, 1071 ¶7. Thereafter, the

2

Second Circuit confirmed that under the 1938 Grant, DC owned all Superman rights, including the renewal copyright, and that Siegel and Shuster owned none. *Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909, 912-913 (2d Cir. 1974); ER-111-12 ¶¶12-14.

## B.    <u>The 1992 Agreement</u>

After Joe died in 1992, no one held his termination rights because he was survived only by his siblings, Frank (died 1996) and Jean. ER-119-20 ¶¶23-26. At that time, only spouses, children and grandchildren held termination rights under 17 U.S.C. §304(c)(2). As Joe had few assets, his estate was originally not probated. ER-120 ¶27. Frank/Jean begged DC for a pension increase. In September 1992, DC informed Frank/Jean that they had no rights. ER-126 ¶31. DC thereafter provided a one-page agreement (*see* below), which granted Frank/Jean a $25,000 pension (instead of Frank's $5,000 pension under a 1975 agreement), and included a short release of any rights Frank/Jean "may have." ER-119-26 ¶¶22, 28-30; 664, 703-04.

# 1992 Agreement

DC COMICS INC.
1325 Avenue of the Americas
New York, New York 10019
(212) 636-5555
FAX (212) 636-5401

Paul Levitz/Executive Vice President & Publisher

Dated as of August 1, 1992

Mr. Frank Shuster                     Ms. Jean Shuster Peavy
98-120 Queens Blvd., Apt. 4K          316 Horton Lane, NW
Rego Park, NY  11374                  Albuquerque, NM  87114

Dear Mr. Shuster and Ms. Peavy:

    This is to confirm our agreement to pay you, collectively, a total of
$25,000 a year, payable to Jean Shuster Peavy, commencing as of August 1,
1992, for as long as either one of you is alive.  Such amounts shall be
payable in accordance with Warner Communication Inc.'s customary payroll
practices and shall be subject to all applicable withholding taxes.  If Jean
Shuster Peavy shall predecease Frank Shuster, then the foregoing payments
shall be made to Frank Shuster for as long as he shall live.

    We ask you to confirm by your signatures below that this agreement fully
settles all claims to any payments or other rights or remedies which you may
have under any other agreement or otherwise, whether now or hereafter
existing regarding any copyrights, trademarks, or other property right in any
and all work created in whole or in part by your brother, Joseph Shuster, or
any works based thereon.  In any event, you now grant to us any such rights
and release us, our licensees and all others acting with our permission, and
covenant not to assert any claim of right, by suit or otherwise, with respect
to the above, now and forever.

    If, despite the terms of this agreement, either of you assert any such
claim of right, for any reason, you agree to refund to us, upon the making of
any such assertion, all amounts previously paid to you hereunder, and we will
have no obligation to make any further payments under this agreement.  We
also reserve all of our other rights, remedies and defenses in such an event.

    If after full consideration of the foregoing, you accept and agree to
all of the above, please so indicate by signing below where indicated.

                              Very truly yours,

                              DC Comics

                              By: _____
                                  Paul Levitz

ACCEPTED AND AGREED TO:

_Frank Shuster_
Frank Shuster                         Dated:  10/2/92

_Jean Shuster Peavy_
Jean Shuster Peavy                    Dated:  10/2/92

Exhibit O                             8
159                                   ER-704

4

### C.    The Shuster Termination

The Copyright Term Extension Act, Pub. L. No. 105-298 (1998)("CTEA"),

thereafter extended termination rights to an author's estate, in the absence of a

surviving spouse, child, or grandchild.  17 U.S.C. §304(c)(2)(D).  In 2003,

Shuster's nephew and alternate executor under his will, Mark Peary, petitioned to

probate Shuster's estate, and was appointed executor with the "power …to

terminate prior transfers of the decedent's copyright(s)."  ER-144-49 ¶¶44-48, 869-

73.  Thereafter, in 2003, the Estate served a statutory notice on DC, terminating the

1938 Grant, effective 2013.  ER-150-58 ¶¶49-60.

### D.    This Action

In 2010, DC filed this suit.  ER-1620; ER-1577-1596.  DC's First Claim

sought declaratory relief that the termination was invalid, arguing, in part, that the

1992 Agreement barred termination as a supposed "revocation" of Shuster's 1938

Grant and non-terminable "re-grant" of Superman.  ER-1577-86 ¶¶105-34.

The parties filed cross-motions for summary judgment.  ER-986-1021, 1298-

1330.  The court issued a tentative order granting DC's motion.  ER-237-55.  At

the hearing, however, Judge Wright emphatically rejected DC's argument (ER-

527:1-7) and stated:

> Well, I can see why DC would basically want to tear up a clear,
> unequivocal grant of intellectual property in Superman from 1938.
> I can understand why they would tear that up for this ephemeral
> thing [the 1992 Agreement]. That makes a lot of sense to me.

5

ER-534:7-11.  Weeks later, the court surprisingly granted DC's motion (ER-1-18),

holding the Agreement "impliedly" eliminated the termination right.  ER-13.  This

appeal followed.  ER-19-27.  On November 21, 2013, a divided panel affirmed.

Op. 3-7.

## ARGUMENT

## I.   THE OPINION CONFLICTS WITH BINDING PRECEDENT OF THIS COURT AND 17 U.S.C. §304(c)(5).

### A.   The Termination Right

For centuries, Congress has provided authors with the right to recover

previously-transferred copyrights, to enable them to participate in their value and to

remedy the publisher-author imbalance.  *Stewart v. Abend*, 495 U.S. 207, 218-21

(1990).  Congress intended renewal copyrights to revert to the author and "provide

for [his] family."  *Id.* at 217.  *Fred Fisher Music Co. v. M. Witmark & Sons*, 318

U.S. 643 (1943) gutted this by allowing pre-assignment of renewal copyrights.

When Congress extended the renewal term in the 1976 Copyright Act, it

provided an inalienable right to recover an author's copyrights for the extended

term by statutorily terminating old grants.  In reaction to *Fred Fisher*, Congress

spoke unequivocally:  "Termination of the grant may be effected notwithstanding

***any*** agreement to the contrary...," covering as broad a range of agreements as

possible.  17 U.S.C. §304(c)(5) (emphasis added).  *See* Dkt. 11-1 at 20-23.

Congress reaffirmed its objectives in the 1998 CTEA, coupling a further extension with a second termination right (Section 304(d)), granting termination rights to estates, and again ensuring that it could not be waived, settled or alienated. 17 U.S.C. §304(a)(1)(C)(iii), (d).

### B.    The Opinion Contravenes Section 304(c)(5), *Milne* and *Mewborn*

The Opinion contravenes Section 304(c)(5), and this Court's careful holdings in *Milne* and *Mewborn*, by construing a "boilerplate" release in an irrelevant 1992 pension agreement with siblings, who held no termination rights, to eviscerate the Estate's valuable termination right.

*Milne* and *Mewborn* maintained Section 304(c)(5)'s mandate that the termination right may be exercised "notwithstanding any agreement to the contrary."  They held that where a statutory heir could serve a termination notice but instead uses "the leverage of imminent vesting to revoke the pre-1978 grant and enter into a highly remunerative new grant of the same rights … it [is] tantamount to following the statutory formalities, and achieve[s] the exact policy objectives for which [the termination right] was enacted."  *Mewborn*, 532 F.3d at 987, citing *Milne*, 430 F.3d at 1044-45.

*Milne* spent paragraph after paragraph explaining that Christopher Milne's post-1978 renegotiation was not "contrary" to Congress' objectives, because he

7

"us[ed] the bargaining power conferred by his termination right" "result[ing]…in a net gain of hundreds of millions of dollars....". *Id*. at 1040-41; 1046-48. By using his termination right as leverage, Christopher's post-1978 "revocation and regrant" was not "to the contrary" because it achieved "the very result envisioned by Congress when it enacted the termination provisions." *Id.* at 1047.

The Second Circuit has engaged in a strikingly similar analysis. *See Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 202-04 (2d Cir. 2008)("Elaine Steinbeck did renegotiate and cancel the 1938 Agreement while wielding the threat of termination. Indeed, this kind of renegotiation appears to be exactly what was intended by Congress.").

The 1992 Agreement fails to satisfy this standard in every way. It does not even purport to revoke Shuster's grants or to re-assign his rights because before the 1998 CTEA, *no one* held Shuster termination rights. Shuster's siblings did not "leverage" a non-existent right, and their modest 1992 Agreement reflects this.

In *Mewborn,* where the publisher, like DC, impersonated *Milne* by claiming that an heir's non-terminable 1978 grant superseded a terminable pre-1978 grant, this Court refused to expand *Milne* beyond "its distinct factual scenario." 532 F.3d at 987, 989. It focused on the heir's lack of termination leverage, in contrast to Christopher's "immediately investative" termination rights, 532 F.3d at 989("[U]nlike Milne, Mewborn had nothing in hand with which to bargain"), 987-

8

88, and held that insofar as her 1978 re-assignment was construed to bar "Mewborn's termination rights … such an assignment would be void as an 'agreement to the contrary' pursuant to §304(c)(5)."  *Id*. at 986.[1]

The Opinion ignores Section 304(c)(5) and this critical aspect of *Milne* and *Mewborn* to hold that an author's alleged successor may eradicate the termination right by entering into some grant at any time.  Op. 5.

The Opinion adopts DC's straw man that "defendants argue [*Mewborn*] should govern rather than *Milne*" and "effectively ask us to overturn our decision in *Milne*."  Op. 7.  Not so.  Appellants *heavily* relied on *Milne,* as did *Mewborn*.  Dkt. 11-1 at 1,5,6,16,18,23-32,34-37,39,45,46,60; Dkt. 28-1 at 2-4,6-8,10-17,26,28,30.  This Court's decisions are consistent with one another, and the Opinion contradicts both.

The Opinion relies solely on an out-of-context snippet from *Milne*, 430 F.3d at 1045-46, citing H.R. Rep. 94-1476.  Op. 6.  *Milne* referenced this to show that an heir with a termination right "may contract, as an alternative to statutory termination" "us[ing] the increased bargaining power conferred by the imminent

---

[1] This Court was further "informed" by *Marvel Characters Inc. v. Simon*, 310 F.3d 280, 292 (2d Cir. 2002), which held that a settlement agreement, as construed to effectively preclude termination "constitutes an 'agreement to the contrary' …." 532 F.3d at 985.  *Simon* "affirmed that 'the clear Congressional purpose behind § 304(c) was to prevent …waiving the[] termination right by contract.'" *Id.*

9

threat of statutory termination to enter into new, more advantageous grants." 430 F.3d at 1045-46. The actual legislative history, concerning Section 203, not Section 304 at issue, reads:

> **Section 203 would not** prevent the parties to a transfer or license from voluntarily agreeing at any time to terminate an existing grant and negotiating a new one, **thereby causing another 35-year period to start running**.

H.R. Rep. 94-1476 at 127 (1976) (emphases added). The highlighted portion, omitted from the Opinion, is crucial. An author's new grant does not eliminate Section 203's termination right, commencing 35 years after each grant, it merely resets the clock.

Even if this passing comment on Section 203 applied, it cannot reverse Section 304(c)(5)'s unambiguous text. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 304 (2006).

The Opinion's "freedom of contract" emphasis is misplaced given that nothing in the record revokes Shuster's 1938 Grant. Furthermore, the Copyright Act preempts state contract law, 17 U.S.C. § 301; and its termination right, Section 304(c)(5) and other protective provisions (§§304(c)(6)(D),(C)), all expressly abrogate "freedom of contract" principles.

10

## II.    THE 1992 AGREEMENT DOES NOT REVOKE SHUSTER'S 1938 SUPERMAN GRANT, NOR GRANT HIS COPYRIGHTS

The entire Opinion rests on the false construct that the 1992 Agreement was intended to revoke Shuster's pre-1978 grants, hand his copyrights to his siblings, and simultaneously re-grant them back to DC. The 1992 Agreement says nothing of the sort. Dissent 1.

It is also implausible that DC, <u>for no reason</u>, would exchange its iron-clad chain-of-title to the billion-dollar Superman franchise from Shuster himself, upheld in two court judgments, for the nebulous language in a pension agreement with his siblings, or that if this was DC's intention, it would do so in anything less than a clear instrument. ER-111-12 ¶¶13-15; 527:1-7; 534:7-11.

The 1992 Agreement starkly contrasts with the *explicit* revocations and re-grants in lieu of termination approved in *Milne*, 430 F.3d at 1040, 1044 (emphasizing "undisputed fact[] that the 1930 grant was expressly revoked"), and *Steinbeck*, 537 F.3d at 196 (1994 contract expressly stated it "'will cancel and supersede the previous agreements'").

In *Mewborn,* this Court rejected similar *implied* novation arguments masquerading as the explicit "revocation and regrant" in *Milne*. 532 F.3d at 989. DC's arguments, adopted by the Opinion, closely resemble those rejected in *Mewborn*. The Opinion's dismissal of *Mewborn*, by erroneously presuming that

11

Shuster's 1938 Grant was *impliedly* revoked, is circular.  Op. 6.  Nowhere does the 1992 Agreement purport to extinguish the 1938 Grant, which remained operative and subject to statutory termination.  Dissent 2.

The 1992 Agreement is even farther afield from *Milne* (and *Steinbeck*) than the 1978 assignment in *Mewborn,* because it does not even purport to assign *the author's* copyrights:

> [T]his agreement **fully settles all claims to any payments or other <u>rights or remedies</u> <u>which you [Frank/Jean] may have</u> under any other agreement or otherwise**…regarding any…property right in any and all work created…by your brother, Joseph Shuster…**In any event, you now grant to us any <u>such rights</u>** ["you may have"]….

ER-704 (emphases added).   The Opinion's truncated quote obscures that this is a quitclaim and release of *Frank and Jean's* rights and claims, if any.  Op. 4.  And as DC told Jean in 1992:  "you don't have any legal rights or claims whatsoever."  ER-706.

In 1992, DC wholly owned Shuster's copyrights under his 1938 Grant.  ER-111-12 ¶¶13-15.  Even if the 1992 Agreement purported to grant them, it would be a "nullity," like the gratuitous re-grant in *Mewborn*, 532 F.3d at 986.

There was no reason in 1992 for DC to extinguish its critical 1938 Grant.  Paul Levitz, DC's long-time President, *who negotiated and signed the 1992 Agreement*, refused to testify that the 1992 Agreement was intended to revoke Shuster's assignment.  ER-1230-33.

The Estate served its termination notice in 2002; yet DC never raised the irrelevant 1992 Agreement until 2010. ER-141-42 ¶41; ER-895-901.

Long after 1992, DC relied on the same pre-1978 grants it now says were revoked. DC's 2011 counterclaims *admitted* that Shuster's pre-1978 grants had not been extinguished in 1992:

> All grants made by Siegel and Shuster or rights in Action Comics No. 1 [1938] are still in effect….

Reply Excerpts of Record ("RER") 24 ¶87. DC made a raft of similar allegations. *See e.g.* Dkt. 12, Ex. 2 (As to Siegel and Shuster's grants, "DC remains (through Shuster's un-terminated interests) a co-owner of the copyrights…"); RER-21 ¶69 (As to Shuster's "May 21, 1948 Consent Agreement, the grant contained therein to all copyrights related to Superman remains in full force and effect."); 30 ¶112 ("The grants made by Siegel and Shuster…are still in effect…").

## A.    No Novation Of The 1938 Grant Under New York Law

As Judge Thomas concluded, "the 1992 Agreement did not effect a valid novation under New York law" because "[t]here is no indication in the 1992 Agreement that the prior agreement was extinguished by the new agreement." Dissent 2.

"'New York courts have set a stringent standard for novation.'" *Ruso v. Morrison*, 695 F. Supp.2d 33, 53 (S.D.N.Y. 2010), citing *Abuelhija v. Chappelle*, 2009 WL 1883787, at *6 (S.D.N.Y. 2009). A court will not find a "novation"

13

unless the parties manifested an "unequivocal intention" to extinguish the prior contract. *Meyersohn v. Bloom,* 687 N.Y.S.2d 341, 342 (App. Div. 1999); *Healey v. Healey,* 594 N.Y.S.2d 90, 91 (App. Div. 1993) (requiring a "clear and definite intent").

"'Not only must the intention to effect a novation be clearly shown, but a novation must never be presumed.'" *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 736 F. Supp. 1281, 1284 (S.D.N.Y. 1990), citing *Wang v. Chen*, 1992 WL 7840, at *6 (S.D.N.Y. 1992).

The Opinion disregards all this; says a novation may be "implied" (citing *Goldbard v. Empire State Mut. Life Ins. Co.*, 171 N.Y.S.2d 194, 198-199 (N.Y. App. Div. 1958)), but the two are not mutually exclusive. Op. 4.[2] This is also a red herring because the 1992 Agreement nowhere *implies* an intent to extinguish Shuster's 1938 Grant.

*Goldbard* did not relax New York's "stringent standard." An insurer asserted, like the Opinion (at 4), that "settlement" caused a novation. The court held "[t]here is no magic to the words 'settlement' or 'compromise' in deciding" novation, *id.* at 198, and that the settlement did <u>not</u> supersede because there was

---

[2] The only other cited case, *Goldome Corp. v. Wittig*, 634 N.Y.S.2d 308, 309 (App. Div. 1995), simply held that "a clear and unambiguous" settlement agreement discharged a non-solicitation covenant in an earlier agreement.

none of the "finality," "deliberateness" or "formalization with which one associates substituted agreements." *Id.* at 236. The same is true here.

Read consistently with New York's "strict standard," an implied novation means the parties' circumstances and conduct unequivocally manifest an intent to extinguish the prior contract. *Sporre v. International Paper,* 1999 WL 1277243 at *4 (S.D.N.Y. 1999)(although "consent may be implied…the intention to effect a novation must be clearly shown.").

Where the *only* purported evidence is the new agreement, it must contain definitive language extinguishing the earlier agreement. *Globe Food Services Corp. v. Consolidated Edison Company of New York, Inc.,* 584 N.Y.S.2d 820 (App. Div. 1992) is instructive. Although a new agreement stated it "shall replace all prior agreements," that general language was insufficient "in the absence of more definitive language…e.g., 'a revocation and cancellation of the prior agreement.'" *Id.* at 821. *See Abuelhija*, 2009 WL 1883787, at *6 (clause that new agreement "'supersedes all understandings of the parties hereto'" insufficient to extinguish old agreement).

Nothing in the language "fully settles all claims **…**which you [Frank/Jean] may have" (Op. 4), or anything else in the 1992 Agreement, expressly *or* impliedly assents to extinguishing Shuster's 1938 Grant.

15

As Judge Thomas observed:

> There is no statement to that effect in the 1992 Agreement and, in fact, the prior copyright grant is not referenced at all…*See e.g. First Call Friendly Note Buyers v. McMenamy*, 837 N.Y.S.2d 363, 364 (N.Y.App. Div. 2007)(holding that there was no novation 'inasmuch as there is no indication that the original contract was extinguished.'); *see also Wasserstrom* [*v. Interstate Litho Corp*.], 495 N.Y.S. [217], at 219 [(N.Y.App.Div. 1985)](noting that allegedly superseding agreement 'makes absolutely no reference" to allegedly superseded agreement 'and cannot be considered to have modified it in any way').

Dissent 2.  *See Multimedia Patent Trust v. DirecTV, Inc.*, 2011 WL 3610098, at *3-4 (S.D. Cal. 2011) (applying New York law, "new license agreement would not create a novation for a nonidentified prior license agreement;" "boilerplate" merger clause "does not evidence a 'clear expression' of intent to extinguish a separate and distinct written contract"); *Ullman-Briggs, Inc. v. Salton, Inc.,* 754 F. Supp. 1003, 1007 (S.D.N.Y. 1991) (no novation where allegedly superseded contract was not specifically "mentioned").

Frank and Jean's boilerplate release is entirely insufficient for a novation under New York law.  There was also nothing to novate – no outstanding obligations, no real dispute, no inconsistency between Shuster's 1938 Grant and the 1992 Agreement.  Frank and Jean had no rights/claims under the fully performed 1938 Grant.  ER-107 ¶7; *Siegel*, 508 F.2d at 912-913.  *See* 22A N.Y. Jur. Contracts §473 ("A novation requires an existing executory contract, and there cannot be a novation of a contract under which all transactions have closed.").

16

Frank and Jean could certainly have "fully settle[ed]" any claims and quitclaimed "any rights" they "may have" had without extinguishing DC's 1938 Grant from Shuster himself. *See Water St. Dev. Corp. v. City of New York,* 632 N.Y.S.2d 544, 545 (App. Div. 1995) ("[T]he assignment …was not at variance with the original agreement. There being no variances, there can be no novation.").

## B.    Frank And Jean Lacked Legal Authority To Revoke Shuster's 1938 Grant

As pointed out by Judge Thomas, "neither Frank nor Jean had the authority to enter into a novation of the original [1938] contract":

> Joe's estate hadn't been probated, nor had Jean been appointed his executrix…In 1992, California law required probate of any estate in which the value of the personal property exceeded $60,000.  Under California law, Jean could not dispose of Joe's copyright interests before probate.

Dissent 3 (citations omitted).

It was DC's burden to prove its novation defense, including Jean/Frank's legal capacity. *See Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 490 (S.D.N.Y. 2002).  DC never established this.

The Opinion disregarded this threshold deficiency, stating it was not in Appellants' opening brief.  Op. 5 n.3.  However, the opening brief argued the legal facts underlying Jean/Frank's lack of authority (*i.e*., the Estate was not probated

17

until 2002, and Jean was not the executrix) (Dkt. 11-1 at 4, 9, 11, 42); the issue was fully briefed below (ER-93-94, 456-57, 1008, 1162-63, 1211, 1320); decided by the district court (ER-3-4, 11-13); raised in Appellee's answering brief (Dkt. 24-1, 11, 19, 48); covered in Appellants' reply (Dkt. 28-1 at 16, 17); and raised at oral argument (http://www.ca9.uscourts.gov/media/view.php?pk_id=0000010878).

This argument was also raised in a related appeal before the same panel by Appellants and answered by DC. Appeal No. 11-56934, Dkt. 8-1, at 45; Dkt. 16-1 at 49.

This Court will also consider an argument not in an opening brief if "one of three exceptions applies: (1) 'for good cause shown,' (2) when the issue 'is raised in the appellee's brief,' or (3) 'if the failure to raise the issue properly did not prejudice the defense of the opposing party.'" *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1150 n.3 (9th Cir. 2007) (citations omitted).

Both the second and third exceptions apply. DC was not prejudiced; it asserted Jean's legal capacity. Dkt. 24-1 at 11, 19, 48. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n. 3 (9th Cir. 2004)("[appellee] briefed it and thus suffers no prejudice"); *Rosenbaum*, 484 F.3d at 1150 n. 3 (court considers reply if issue raised in appellee's brief); *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990) (same). The first exception also applies because depriving the Estate of its rights, when Frank/Jean lacked legal authority to do so, results in "manifest

injustice." *Mamouzian v. Ashcroft,* 390 F.3d 1129, 1136 n.4 (9th Cir. 2004); Fed. R. App. P. 2.

### C.     It Was Error To Exclude Extrinsic Evidence

A contractual phrase is ambiguous if it is "capable of more than one meaning." *Walk–In Med. Centers, Inc. v. Breuer Capital Corp*., 818 F.2d 260, 263 (2d Cir.1987).   Because Frank and Jean could easily have settled *their* rights/claims, if any, without extinguishing the 1938 Grant, it was error to exclude extrinsic evidence (Op. 5, n.3), particularly on DC's summary judgment motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986).

Indeed, as DC "fail[ed] to submit extrinsic evidence that resolves the [issue]…[it] must be resolved against the drafter of the contract," DC.  *Kenavan v. Empire Blue Cross and Blue Shield,* 677 N.Y.S.2d 560, 563 (App. Div. 1998).

### D.     The Opinion Contravenes Summary Judgment Standards

Courts consider cross-motions for summary judgment individually, examining the evidence in the light most favorable to the non-movant.  *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001).  The Opinion, however, viewed the 1992 Agreement on DC's motion *in the light most favorable to DC*, adopting factual inferences of a non-existent intent to extinguish Shuster's 1938 Grant from a boilerplate release of Jean/Frank's rights, if any, while

19

disregarding that this simple pension agreement, the parties' circumstances and conduct, all indicated the opposite. ER-6-7; *see* Dissent 1-3.

As <u>DC</u> failed to meet its burden of presenting credible evidence establishing its defense, the Estate should have prevailed. *Celotex Corp. v. Catrett* 477 U.S. 317, 327 (1986). At the very minimum, the record raised a triable issue as to intent[3], precluding summary judgment for DC. *Id*.

### III.    DC'S THIRD CLAIM SHOULD BE DENIED

As DC's Third Claim was expressly pled "in the alternative" to the First Claim, the district court's order granting the moot Third Claim must be <u>reversed</u>. The Estate's appeal of that order was <u>not</u> "moot." Op. 8. If, on rehearing, the order is reversed on the First Claim, it should still be reversed on the Third Claim for the reasons in Appellants' briefs. Dkt. 11-1 at 58-61; Dkt. 28-1 at 30. The Opinion implies that DC's Third Claim alleges that the Estate was required to delineate its short-lived joint venture agreement in its termination notice. Op. 7-8. It does not. ER-1594-96 ¶¶165-73. This agreement was voluntarily cancelled because it was void *ab initio* under §304(c)(6)(D), and had no effect. ER-166 ¶76, 894. 37 CFR §201.10(b)(1)(vii) <u>nowhere</u> requires mentioning it (Op. 8); it simply

---

[3] Intent is a highly fact-specific inquiry, generally unsuitable for summary judgment. *See Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1060 (9th Cir. 2000).

requires "a listing of the surviving [] persons…and relationships to th[e] deceased author" in termination notices by the author's heirs.

## CONCLUSION

Rehearing or rehearing en banc should be granted.  The Opinion rewrites the 1992 Agreement, eradicating the Estate's valuable termination interest, contrary to Congress' clear objective, Section 304(c)(5), this Court's binding precedent, applicable New York law, and summary judgment standards.  Under the Opinion, all that is needed to destroy the termination right is some post-1978 release or quitclaim by a non-statutory successor that references copyrights.  If left standing, the district court's decision and the Opinion will make a mess of this Court's careful decisions in *Milne* and *Mewborn*, and turn a vital federal right into a state-contract free-for-all, paving the way for its circumvention.


Dated:  December 10, 2013          TOBEROFF & ASSOCIATES, P.C.


                                   By:  /s/ Marc Toberoff
                                   _____
                                        Marc Toberoff
                                        Attorneys for Defendants-Petitioners

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 9th Circuit Rule 35-4(a) and 40-1(a), I certify that Defendants-Appellants' attached petition for rehearing or rehearing en banc is proportionately spaced, has a typeface of 14 points or more, and contains 4,196 words, as measured by the Microsoft Word program used to generate the brief.

Dated:  December 10, 2013          TOBEROFF & ASSOCIATES, P.C.


By:  /s/ Marc Toberoff
    Marc Toberoff
    Attorneys for Defendants-Petitioners

22

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served electronically by the Court's ECF system and by first class mail on those parties not registered for ECF pursuant to the rules of this court.


Dated:  December 10, 2013        TOBEROFF & ASSOCIATES, P.C.


                                 By:  /s/ Marc Toberoff
                                      Marc Toberoff
                                      Attorneys for Defendants-Petitioners

**APPENDIX**

FILED

**NOT FOR PUBLICATION**

NOV 21 2013

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DC COMICS,<br><br>               Plaintiff - Appellee,<br><br>   v.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF; MARK WARREN<br>PEARY, as personal representative of the<br>Estate of Joseph Shuster; LAURA<br>SIEGEL LARSON, individually and as<br>personal representative of the Estate of<br>Joanne Siegel; JEAN ADELE PEAVY,<br><br>          Defendants - Appellants. | No. 12-57245<br><br>D.C. No. 2:10-cv-03633-ODW-RZ<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted May 23, 2013
Pasadena, California

---

      [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK, District Judge.**

     In this appeal, we address another chapter in the long-running saga regarding the ownership of copyrights in Superman—a story almost as old as the Man of Steel himself.[1]  In 2003, Defendant Mark Peary, acting as executor of the estate of Joseph Shuster (one of the two co-creators of Superman), filed a copyright termination notice pursuant to 17 U.S.C. § 304(d), seeking to reclaim the copyrights to Superman that Shuster had assigned to Plaintiff DC Comics ("DC") in 1938.  DC brought this action in response, seeking, in the claim that we review here, a declaratory judgment that the notice of termination filed by the estate is invalid.  DC contends that, in an agreement (the "1992 Agreement") it signed with Joseph Shuster's siblings (including his sister and sole heir, Jean Peavy), the siblings received pensions for life in exchange for a revocation of the 1938 assignment of copyrights to DC and a re-grant to DC of all of Shuster's copyrights in Superman.  Because the 1976 and 1998 statutes permitting the filing of copyright termination notices permit only the termination of assignments

---

    ** The Honorable John W. Sedwick, U.S. District Judge for the District of Alaska, sitting by designation.

    [1]For recently-published histories, see Brad Ricca, *Super Boys: The Amazing Adventures of Jerry Siegel and Joe Shuster—the Creators of Superman* (2013) and Larry Tye, *Superman: The High-Flying History of America's Most Enduring Hero* (2012).

2

"executed before January 1, 1978," 17 U.S.C. § 304(c), (d), DC contends that the 1992 Agreement forecloses the estate's 2003 notice of termination, in that it leaves no pre-1978 assignment to terminate (instead creating a new assignment effective 1992). The district judge agreed with DC, granting it partial summary judgment on its claim for declaratory relief, as well as on another of its claims pled in the alternative. The district judge entered final judgment in favor of DC on these claims pursuant to Fed. R. Civ. P. 54(b), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district judge's grant of summary judgment *de novo*, and we affirm.

    **1.**    The district judge correctly held that the 1992 Agreement, as a matter of New York law,[2] superseded the 1938 assignment of copyrights to DC, and therefore operated to revoke that assignment and re-grant the Superman copyrights to DC. The estate's primary argument to the contrary is that the 1992 Agreement

---

    [2]The parties concede that New York contract law generally governs the interpretation of the contract. We reject the defendants' arguments that federal law imposes certain additional requirements on a revocation and re-grant, such as that it must be in express terms. *See Classic Media Inc. v. Mewborn*, 532 F.3d 978, 989 (9th Cir. 2008) (suggesting that an agreement could "expressly or impliedly transfer" a termination right); *see also Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1046 (9th Cir. 2005) (quoting legislative history stating that "nothing in this section or legislation is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment").

does not, in express terms, cancel the 1938 agreement.  As New York courts have held, however, "[t]here is no magic to the words 'settlement' or 'compromise'" in deciding whether one agreement supersedes another; "[t]he question is always whether the subsequent agreement . . . is, as a matter of intention, expressed or implied, a superseder of, or substitution for, the old agreement or dispute." *Goldbard v. Empire State Mut. Ins. Co.*, 171 N.Y.S.2d 193, 198-99 (N.Y. App. Div. 1958); *see also Goldome Corp. v. Wittig*, 634 N.Y.S.2d 308, 309 (N.Y. App. Div. 1995) (holding that a mutual release of all causes of action was "clear and unambiguous language" superseding all prior agreements).  We agree with the district judge that, under the plain text of the 1992 Agreement, which "fully settles all claims" regarding "any copyrights, trademarks, or other property right in any and all work created in whole or in part by . . . Joseph Shuster," and further "now grant[s] to [DC] any such rights," it superseded the 1938 assignment as a matter of New York law.  We therefore hold that the agreement created a new, 1992

4

assignment of works to DC—an assignment unaffected by the 2003 notice of termination.[3]

**2.**    We reject the defendants' contention that the 1992 Agreement cannot foreclose the 2003 notice of termination because it is an "agreement to the contrary" within the meaning of 17 U.S.C. § 304(c)(5).  Defendants' argument runs counter to the plain text of the copyright termination statute, in that it would permit the copyright termination provision to extinguish a post-1977 copyright assignment, despite the statute's express limitation to assignments "executed

---

[3]Because we agree with the district judge that this conclusion is evident from the text of the agreement, we find no error in his refusal to consider the extrinsic evidence offered by defendants (which is, in any event, insufficient to overcome the strong inference from the text itself).  *See W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 162-63 (N.Y. 1990) (under New York law, the parties' intent may be divined as a matter of law from the four corners of the contract, without looking to extrinsic evidence); *see also Rentways, Inc. v. O'Neill Milk & Cream Co.*, 126 N.E.2d 271, 273 (N.Y. 1955).  We also deny defendants' motion for judicial notice of certain documents, because defendants offer no reason why they could not have provided this evidence to the district judge.  *See Moore v. Czerniak*, 574 F.3d 1092, 1116 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 733 (2011).

The heirs argued explicitly below, as a ground for rejecting DC's claim for summary judgment, that the 1992 Agreement could not now bind the estate because "the Shuster Executor was not a party to the 1992 Agreement"—an issue of state law that they appeared to have tried to revive at oral argument.  The district judge's ruling implicitly rejected this argument, holding that the estate was bound by the 1992 Agreement.  The factual and legal dispute regarding whether Joseph Shuster's sister acted as his executor when she signed the 1992 Agreement is a potentially complex one; we do not address this question of state law, because the heirs failed to raise it in their opening brief.  *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009); Fed. R. App. P. 28(a)(9)(A).

5

before January 1, 1978." 17 U.S.C. § 304(d); *see Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1048 (9th Cir. 2005) ("[t]he CTEA's termination provision does not apply to post-1978 agreements"). In *Milne*, we noted that the interpretation of the statute defendants favor would conflict with extensive legislative history endorsing the continued ability of authors (or their heirs) to extinguish a prior grant and replace it with a new one:

> Congress specifically stated that it did not intend for the [copyright termination] statute to "prevent the parties to a transfer or license from voluntarily agreeing at any time to terminate an existing grant and negotiating a new one[.]" H.R. Rep. No. 94-1476, at 127 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5743. Congress further stated that "nothing in this section or legislation is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment." H.R. Rep. No. 94-1476, at 142, 1976 U.S.C.C.A.N. at 5758. Congress therefore anticipated that parties may contract, as an alternative to statutory termination, to revoke a prior grant by replacing it with a new one. Indeed, Congress explicitly endorsed the continued right of "parties to a transfer or license" to "voluntarily agree[ ] at any time to terminate an existing grant and negotiat[e] a new one." H.R. Rep. No. 94-1476, at 127, 1976 U.S.C.C.A.N. at 5743.

*Milne*, 430 F.3d at 1045-46 (all edits but first in original). Both our holding in *Milne* and this legislative history answer the heirs' contentions that the estate could not have entered into a revocation and re-grant prior to the passage of the 1998 Copyright Term Extension Act and its creation of the termination right in 17 U.S.C. § 304(d) and addition of an executor to the list of statutory owners of a

6

termination interest, 17 U.S.C. § 304(c)(2)(D).[4]  Our later decision in *Classic Media Inc. v. Mewborn*, which defendants argue should govern rather than *Milne*, is inapposite, in that it involved an agreement that did not extinguish the pre-1978 assignment that was the subject of the notice of termination.  532 F.3d 978, 989 (9th Cir. 2008).  Defendants' other arguments effectively ask us to overturn our decision in *Milne*—something this panel is not generally empowered to do.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

    **3.**    Defendants also appeal the district judge's grant of summary judgment on DC's third claim, regarding the invalidity of certain agreements signed by the heirs—including one between the heirs and a corporation headed by their attorney, Marc Toberoff, in which they formed a joint venture to exploit any recovered Superman works.  The heirs concede that their alienation of their putative future interests in the Superman copyright was contrary to the copyright

---

[4]Since our decision in *Milne*, at least one other circuit has adopted a similar rule.  The Second Circuit has held that, "provided that a post-1978 agreement effectively terminates a pre-1978 grant, Congress did not manifest any intent for the earlier agreement to survive simply for purposes of exercising a termination right in the future."  *See Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 203 (2d Cir. 2008); *see also id.* at 202-03 ("We do not read the phrase 'agreement to the contrary so broadly that it would include any agreement that has the effect of eliminating a termination right . . . .  We cannot see how the 1994 Agreement could be an 'agreement' to the contrary solely because it had the effect of eliminating termination rights that did not yet exist.").

statute.  *See* 17 U.S.C. § 304(c)(6)(D).  We note that their failure (and that of Toberoff, their attorney and business partner) to disclose this information in the 2003 notice of termination itself appears to violate the relevant regulations governing notices of termination.  *See* 37 CFR § 201.10(b)(1)(vii).  Because, however, this claim was pled in the alternative, and because we affirm the district judge's grant of summary judgment on DC's other claim (for declaratory judgment), we dismiss as moot this aspect of the appeal.

**AFFIRMED.**

FILED

DC Comics v. Pacific Pictures Corp; No. 12-57245

NOV 21 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Thomas, Circuit Judge, dissenting:

I respectfully disagree with my colleagues.

1.      The 1992 Agreement could not have affected the statutory right of termination. The Copyright Act of 1976 gave the author of a copyrighted work, or his widow or surviving child, the ability to terminate a grant of copyrights in the author's work executed before January 1, 1978.  17 U.S.C. § 304(c); *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1040 (9th Cir. 2005).  Thus, in 1992, no one except the surviving spouse or child could exercise the right of termination.  In 1998—six years after the parties executed the agreement at the center of this appeal—Congress extended the termination right to authors' executors, administrators, personal representatives, and trustees.  17 U.S.C. § 304(a)(1)(C)(iii), (d), Pub. L. No. 105-298 (1998).  Therefore, at the time the 1992 Agreement was executed, neither Frank nor Jean had the power to exercise the statutory right of termination.

Thus, the question is whether the 1992 Agreement was a novation that validly revoked and re-granted Joe Shuster's 1938 copyright grant.  If not, then the agreement is either (1) simply a pension agreement that had no effect on the heirs' later-created statutory termination rights; or (2) an "agreement to the contrary" under 17 U.S.C. § 304(c)(5) because it waives the heirs' termination rights, *see*

Patry on Copyright § 7:46 (stating that section 304(c)(5)'s protection of termination rights "notwithstanding any agreement to the contrary" "is intended to make Congress's intent as clear as humanly possible: an author cannot agree to waive his or her termination right").

2.      Under New York law, proof of a novation requires four elements: "'(1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract.'" *Healy v. Healy*, 594 N.Y.S.2d 90, 91 (N.Y. App. Div. 1993) (quoting *Callanan v. Micheli Contr. Corp.*, 508 N.Y.S.2d 711, 712 (N.Y. App. Div. 1986)); *see also Wasserstrom v. Interstate Litho Corp.*, 495 N.Y.S.2d 217, 219 (N.Y. App. Div. 1985) (stating that these four elements "must be present" to establish a valid novation). In my view, the elements are not satisfied.

First, there is no indication in the 1992 Agreement that the prior agreement was extinguished by the new agreement. There is no statement to that effect in the 1992 Agreement and, in fact, the prior copyright grant is not referenced at all. Thus, the third element is not satisfied. *See, e.g., First Call Friendly Note Buyers v. McMenamy*, 837 N.Y.S.2d 363, 364 (N.Y.App. Div. 2007) (holding that there was no novation "inasumuch as there is no indication that the original contract was extinguished"); *see also Wasserstrom*, 495 N.Y.S.2d at 219 (noting that allegedly

-2-

superseding agreement "makes absolutely no reference to" allegedly superseded agreement "and cannot be considered to have modified it in any way").

Further, this record is not sufficient to establish that Joe Shuster's siblings had the authority in 1992 to revoke and supersede his 1938 copyright grant. At that time, Frank was a third-party beneficiary of Joe's agreement with DC, under which DC agreed to pay Frank certain survivor benefits; Jean was a stranger to that agreement. Jean had identified herself as Joe's executrix and sole heir in state probate court and in her communications with DC, but Joe's estate hadn't been probated, nor had Jean been appointed his executrix. Although title to property transfers to heirs upon death, Cal. Probate Code § 7000, that transfer of title is subject to probate administration, Cal. Probate Code § 7001. In 1992, California law required probate of any estate in which the value of the personal property exceeded $60,000. Cal. Probate Code § 13100 (1992). Under California law, Jean could not dispose of Joe's copyright interests before probate. *See* 14 Witkin, Summary of Cal. Law, Wills § 405 (10th ed. 2005 Probate law). Thus, neither Frank nor Jean had the authority to enter into a novation of the original contract.

Therefore, I conclude that the 1992 Agreement did not effect a valid novation under New York law.

3.    Given that the 1992 Agreement had no effect on the statutory right of

-3-

termination and did not effect a novation, the statutory right of termination became part of Joe Schuster's estate. The record is not developed fully enough for me to determine what consequences actually flow from that conclusion. It may well be, under California probate law, that the ultimate outcome is unchanged. But on the record before us, and the narrow question presented in this appeal, I must respectfully dissent.